United States District Court
Southern District of Texas
**ENTERED**
April 02, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDRE HUIZAR, *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:22-CV-3404 |
| BENCHMARK INSURANCE COMPANY, *Defendant*. | § § § | |

## ORDER

Before the Court is the Motion for Summary Judgment (Doc. No. 14) filed by Defendant Benchmark Insurance Company ("Benchmark") against the claims being made against it by a purported insured, Andre Huizar ("Plaintiff" or "Huizar"). Huizar has filed a response in opposition, and Benchmark has filed a reply. (Doc. Nos. 17, 18). The overarching issue presented by this motion is whether Huizar resided in the house. If he did, then insurance existed. If he did not, then insurance did not exist.

### I.  Controlling Summary Judgment Principles

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the Court should not grant the motion. *Celotex Corp.*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a

material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255.

## II.   Background

The relationship between Huizar and Benchmark began when Huizar made an application for a homeowner's insurance policy on or about January 28, 2021. The homeowner's insurance policy was to be for a house located at 833 Baker Drive in Tomball, Texas (hereinafter, the "Property"). According to Benchmark (and supported by the application itself), Huizar made a number of representations.

> On or about January 28, 2021, Plaintiff submitted an application for a homeowners insurance policy to Benchmark for the Property (the "Homeowners Insurance Policy"). Plaintiff made numerous representations on the Homeowners Insurance Application, including that the Property: was owner-occupied, built in 1982, *was not vacant or unoccupied* or for sale *or under construction* or bank owned or in foreclosure, and that there was no unrepaired damage to the roofs or other structures.

(Doc. No. 14 at 6) (emphasis added).

Huizar signed the application affirming the information that he provided was correct and acknowledging that if it were false or misleading the policy could be null and void. Based upon those representations, the Defendant issued the policy on February 2, 2021. (Doc. No. 14, Ex. B).

In pertinent part, the policy provides:

HOMEOWNERS 3 – SPECIAL FORM

AGREEMENT

> We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

2

DEFINITIONS

6. "*Insured location*" means:
    a. The "*residence premises*".
    b. The part of other premises, other structures and grounds *used by you as a residence*; and
        (1) Which is shown in the Declarations; or
        (2) Which is acquired by you during the policy period for your use as a residence;
    c. Any premises used by you in connection with a premises described in a. and b. above…

\*\*\*

RESIDENCE PREMISES DEFINITION ENDORCEMENT
Definition B.11. is replaced by the following:
11. "Residence premises" means:
    a. The one-family dwelling *where you reside*;
    b. The two-, three- or four-family dwelling *where you reside* in at least one of the family units; or
    c. That part of any other building *where you reside*; on the inception date of the policy period shown in the Declarations and which is shown as the "residence premises" in the Declarations.
    "Residence premises" also includes other structures and grounds at that location.

(Doc. No. 17-3 at 9, 33) (emphases added).

The coverage portion of the policy states:

SECTION I – PROPERTY COVERAGES

A. COVERAGE A – DWELLING
    1. We cover:
        a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
        b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

(Doc. No. 19-3 at 10).

In short, the policy insured only the property dwelling, or residence where the policy holder—Huizar—resided at the time. Approximately two weeks (February 16, 2021) after the

3

policy was issued, a winter freeze occurred which led to broken pipes and water damage in the Property. Benchmark sent an adjuster to examine the damage. It was apparent when the adjuster arrived that no one was or had been living there and that there was ongoing construction. Benchmark denied Plaintiff's claim because he was not residing at the Property, and because the Property had been vacant and was under construction. Plaintiff provided Benchmark with pictures and videos that confirmed that to be the case.

The denial of the claim led to this lawsuit.

**III. Analysis**

The construction of a contract is a question of law for the court. *Edwards v. Lone Star Gas Co., a Div. of Enserch Corp.*, 782 S.W.2d 840, 841 (Tex. 1990); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A term not defined by the policy is given its plain, ordinary, and generally accepted meaning unless the policy indicates the term was used in a technical or different sense. *Dimotsis v. State Farm Lloyds*, 5 S.W.3d 808, 811 (Tex. App.—San Antonio 1999, no pet.). It is proper to determine the plain meaning of a term by referring to a dictionary. *Id.*

Under Texas law, the initial burden is on the insured to establish coverage under the terms of the policy. *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 201 (5th Cir. 2014) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyds London*, 327 S.W.3d 118, 124 (Tex. 2010)). Once the insured demonstrates coverage, the insurer must demonstrate that an exclusion applies in order to avoid liability on the insured's claim. *Crownover*, 772 F.3d 197 at 201–02 (quoting *Gilbert*, 327 S.W.3d at 124). Once the insurer demonstrates that an exclusion to coverage applies, the burden then shifts back to the insured to demonstrate that an exception to

4

the exclusion applies, thus bringing the claim back within coverage under the terms of the policy. *Crownover*, 772 F.3d 197, 202 (*quoting Gilbert*, 327 S.W.3d at 124).

Plaintiff is alleging that Benchmark breached the terms of the Policy to Plaintiff. Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). While there arguably could be a valid contract, and perhaps damages if one considers the water damage to the house, the Court finds Plaintiff has failed to raise an issue of material fact as to any other element.

Moreover, an insurer is liable only for losses covered by the policy. *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993). Upon the issuance of the Policy, Benchmark agreed to "provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy." To be insured under the terms of the Policy, the Property must be the insured's residence premises. Here it clearly was not.

Setting aside the other factors such as the ongoing construction and the fact the house was vacant, Plaintiff clearly did not reside there. That being the case, there is no coverage. One need only look at Plaintiff's affidavit in response to the motion to see how his claim fails. In pertinent part he avers:

> 6. I purchased my home on February 4, 2021. Because the home was not ready for immediate move in, I promptly began undergoing renovations to the home so I could move to my new home.
>
> ...
>
> 10. At all times from the date I purchased the home, I intended to reside there.

(Doc. No. 17-1 at 1–2).

Huizar, in fact, never resided in the home. Consequently, there was no coverage. Moreover, his affidavit makes it clear that he made several material misrepresentations in his application. In the application he said the house was not vacant—when in fact (according to his own sworn affidavit) it was. He represented that it was not under construction when in fact it was being renovated. Regardless, the principal problem is that the insurance he purchased from Benchmark only applied to the premises where he lived, and he was not living at the Property at the time of the damage. He only intended to live there at some time in the future.

The law in Texas and this Circuit has long upheld the residence requirement.

> As in *McGowen v. Travelers Insurance Co.*, 5 Cir., 1971, 448 F.2d 1315, 1317, "all the evidence points one way"–at the time of the fire Assured was not occupying the house "principally for dwelling purposes" but was instead living several miles away while awaiting completion of the repairs. Under such circumstances Texas law clearly prescribes that by the explicit terms of the policy no liability for the loss ever arose. *Bryan v. United States Fire Insurance Co.*, Tex.Civ.App., 1970, 456 S.W.2d 702, error ref. n. r. e.; *Transcontinental Insurance Co. of New York v. Frazier*, Tex.Civ.App., 1933, 60 S.W.2d 268; *Home Insurance Co. v. Currie*, 5 Cir., 1931, 54 F.2d 203; *cf. British America Assurance Co. v. Miller*, 1898, 91 Tex. 414, 44 S.W. 60; *United States Fire Insurance Co. of New York v. Rothwell*, Tex.Com.App., 1933, 60 S.W.2d 759.

*Fisher v. Indiana Lumbermans Mut. Ins. Co.*, 456 F.2d 1396, 1398 (5th Cir. 1972). *See also GeoVera Specialty Insurance Co. v. Joachin*, 964 F.3d 390 (5th Cir. 2020) and *Kennett v. USAA Gen. Indem. Co.*, 809 Fed. App'x 228 (5th Cir. 2020).

By his own affidavit, Huizar, just like the plaintiff in *Fisher*, was living elsewhere while he did renovations. The carrier did not breach its contract of insurance with Huizar because "no liability for loss ever arose."

Seeing as the undisputed summary judgment evidence shows that Huizar never resided in the Property, The Court finds as a matter of law that Benchmark did not breach its contract and renders judgment for it on that claim.

## IV. Extra Contractual Claims

This Court has found that Benchmark did not breach its contract when it denied Huizar's claim. Under Texas law, once the contractual claim is resolved in the insurer's favor, all of the extracontractual claims such as those based upon the Texas Insurance Code, the Deceptive Trade Practices Act, the principle of good faith and fair dealing (or bad faith), fraud, conspiracy, or failure to pay promptly do not survive. *State Farm Lloyds v. Page*, 315 S.W.3d 525 (Tex. 2010); *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919 (Tex. 2005).

Consequently, Benchmark prevails as a matter of law on these extracontractual claims as well.

## V. Conclusion

Benchmark's Motion for Summary Judgment (Doc. No. 14) is hereby granted. The Court will enter a separate take-nothing judgment as is required by Federal Rule of Civil Procedure 58(d). All other pending motions are denied as moot.

SIGNED this 2rd day of April, 2024.

Andrew S. Hanen
United States District Judge